## Mann's Admr. v. Reynolds.

(Decided October 30, 1912.)

### Appeal from Boyle Circuit Court.

1. Druggist—Action Against for Damages—Alleged Mistake in Sale of Medicine—Death of Child—Instructions.—In an action against a druggist for damages upon the ground that he sold bichloride of mercury instead of calomel and santonin, which when administered to a child, death resulted, an instruction making the right to recover depend upon death resulting from the administering of the poison was all that the plaintiff was entitled to, and he cannot complain than instruction offered by him predicated upon the same basis, but somewhat different in terms, was refused.

2. Instructions—Giving After Argument.—Where the plaintiff had asked an instruction that it would have been error to refuse, it cannot be said that the court abused its discretion or prejudiced the substantial rights of the plaintiff in giving an instruction after the defense attorneys and one of plaintiff's attorneys had concluded their argument, the plaintiff's case having been presented by a skilled lawyer who doubtless obtained the full benefit of it for his client after it was given.

3. Druggist—Action Against for Death of Child—Evidence.—In an action against a druggist for the death of a child the defense being that the child died of typhoid fever, testimony conforming to the effect of the poison upon one who had typhoid fever was properly admitted.

4. Evidence—Exclusion of.—A party cannot complain of the exclusion of evidence which his own objection caused to be excluded.

JAY W. HARLAN, ROBT. HARDING and E. V. PUYEAR for appellant.

C. C. BAGBY, J. W. RAWLINGS for appellee.

OPINION OF THE COURT BY JUDGE WINN—Affirming.

On August 15, 1908, Mrs. Maude Mann, the mother of George Mann, bought of W. A. Reynolds, a druggist in Junction City, Kentucky, five cents worth of calomel and santonin. She bought the medicine through two little messenger girls, who explained to the druggist that it was for a fourteen-year-old child. The druggist did up the medicine in two packets or papers, each of which contained, according to his testimony, one and one-half grains of calomel and one grain of santonin. Mrs. Mann, shortly after six p. m. administered one of these papers to the child. He died eighteen days afterward. His administrator brought this suit against the druggist for damages, claiming that the medicine delivered was not that purchased, but was instead a poison, bichloride of mercury, commonly known as corrosive sublimate. The druggist defended, denying this allegation and setting up affirmatively that the boy died of typhoid fever. Upon trial the jury returned a verdict in the druggist's favor, and the administrator appeals.

It is first urged that the verdict is flagrantly against the evidence. Without detailing it, it suffices to say that we have carefully examined every detail of the evidence and upon such examination believe the verdict to be in accordance with the preponderance of the testimony and in no sense flagrantly against it.

It is next urged that the court erred in refusing to give an instruction offered by the plaintiff to the effect that, although the jury might believe that the boy had typhoid fever, yet it they further believe that he died of the combined effects of typhoid and bichloride of mercury, they should find for the plaintiff. The court, however, did give an instruction predicated upon the same basis but differing somewhat in its terms. The court told the jury that though they believed that the boy had typhoid fever, yet if they further believe that the corrosive sublimate was administered to the boy and that the poison caused his death or brought on his death, they should find for the plaintiff. There is no substantial difference between the instruction offered and that given. That offered by the plaintiff authorized a recovery if the boy died of the combined effects of the disease and the poison; that given by the court authorized a recovery if the boy had typhoid fever and the poison caused or brought on his death. Both instructions made the right to recover depend upon death resulting from

the administering of the poison. The plaintiff was entitled to nothing more.

It is also complained that the instruction given by the court was not given until after both attorneys for the defense had concluded their argument and after one of plaintiff's attorneys had concluded his and while Mr. Robert Harding was making the concluding argument for the plaintiff. The giving of the instruction at the time when it was given yet afforded the plaintiff an opportunity to argue this question to the jury. The plaintiff's case was then being argued by a skilled and capable lawyer, who had the opportunity to and doubtless did obtain for his client the full benefit of this instruction in the argument. In Paducah Traction Co. v. Sine, 111 S. W., 356, we remarked that the giving of instructions after the conclusion of the argument to the jury should not be approved as a practice, but added that in a few cases the court had refused to reverse for the giving of an instruction at such time when it appeared that the additional instruction was indispensably necessary, or that the case had been fully argued, or that neither counsel asked opportunity to further argue. In the case at bar the argument had not been concluded and the plaintiff, who had asked an instruction of this tenor, had the floor. It would have been error to refuse the instruction; and we cannot say that the court, in correcting its error at this time when there was yet opportunity to argue, abused any discretion or prejudiced the substantial rights of the plaintiff.

The next complaint is that the trial court erred in refusing proof that bichloride of mercury given to a typhoid fever patient would aid in causing the death of the patient. The witness, a physician, however, was permitted to and did testify that such medicine given to a typhoid patient would retard his recovery; and that, as a medical man, he would say that two and one-half grains of bichloride of mercury given to a typhoid patient would cause complications such as gastritis and gastric trouble that would weaken the patent and cause the symptoms of poison if taken inwardly. Answer to the direct question, "Would it aid the disease in killing the patient?" was properly excluded by the trial court. The correct line of testimony should have addressed itself to developing the effect of the poison upon one who

had typhoid fever. The testimony admitted conformed to this inquiry.

It is next complained that the trial court erred in refusing to permit the boy's mother, who testified that she had nursed three cases of typhoid fever, to say that the boy had no symptoms of typhoid fever. Without passing upon her qualifications as an expert, it suffices to say that when Mrs. Mann took the stand again she was permitted to testify that there were no fever symptoms present.

It is next complained that the trial court erred in refusing to permit the mother to testify as to what Dr. Steele told her to get for the boy; and this upon the fact later shown in the record that Reynolds had employed Dr. Steele to go wait upon the boy, and that Steele, therefore (it is argued), was the agent of Reynolds. When this testimony was offered it had not been established that Dr. Steele was in the employment of Reynolds; nor did plaintiff give the court any assurance or explanation that further testimony in the record would render this testimony competent. Naturally the competency of testimony cannot always appear when first offered, because its competency may depend on other facts not yet apparent. In such cases, before counsel can claim the indulgence of the court, he should reasonably satisfy the court by his assurances or otherwise, that the testimony offered will be connected up properly. Jones on Evidence, 2nd Ed. sec. 813. After the employment had been established, there was no offer to renew this line of examination. In addition, Reynolds testifies that the $26 which he paid to Dr. Steele was charged by him to the boy's father and afterward paid.

Dr. Steele had given a deposition before the trial, but it was not used as he was present in person. When Steele was testifying as a witness upon the trial it was sought to contradict him by proof of statements made by him upon the giving of his deposition. Some of the supposedly contradictory deposition testimony was excluded by the court, but the substantial and material part of it was admitted when the examination had further progressed. While testimony is always competent to contradict a witness by showing that he has made other or different statements about relevant matters, we are of opinion that the excluded matter here was inconsequential; since the court did permit testimony of a con-

tradictory nature which went to the meat of the matter, i. e., whether the witness had testified in giving his deposition that Reynolds had admitted to him that the drug sent was bichloride of mercury.

It is also urged as error that the trial court permitted an apothecary to bring into court samples of calomel and of bicholoride of mercury together with potassium iodide, the re-agent used in analyzing or testing the two drugs to determine their character, which re-agent, according to the testimony of Dr. Chase, had been used by him in making an analysis of the other of the two powders sent to Mrs. Mann. The principal complaint seems to be that the bichloride of mercury brought in by the pharmacist was in crystalline form and not in the powdered form like that of Mr. Reynolds; and because the druggist was permitted to pulverize the crystals into a powder in the presence of the jury. The testimony was clear that the drug sometimes came in crystal form, sometimes in powdered form, but that it was one and the same drug. He further complains then that Dr. Chase, who had made the analysis of the drug in the paper, was then permitted to take the stand again and make the experimental test with the drugs brought in by the pharmacist. This testimony but served to illustrate and make clear to the jury the testimony of Dr. Chase as to the analysis he had made. If the plaintiff wanted an examination in open court of the precise powder which Dr. Chase had found in the paper and had analyzed, he then had the opportunity of having an experiment made upon that precise powder if he desired it; for his brief says that Dr. Chase yet had portions of the contents of the paper with him. The defendant in fact asked the physician to apply the potassium iodide to the powder which he had taken from the paper. To this further experiment there was objection by the plaintiff himself, which the court sustained. Plaintiff argues that the witness, when asked if the powder shown him was a part of that filed by him in the case, did not answer that it was, but that he answered instead, "That is the same paper I gave to you last night; yes sir, that is the same paper." The answer read in connection with the testimony then current meant but one thing, and that was that the drug then presented was a part of that which had been analyzed by the witness from the paper pack-

age. Plaintiff cannot complain of the exclusion of the evidence which his own objection caused to be excluded.

There are other objections to the testimony of immaterial character. We have confined ourselves to those argued in appellant's brief. Perceiving no error to the substantial prejudice of the appellant, the judgment of the trial court is affirmed.